**DECLARATION OF CHANTELLE V. BRITTON**
**US DEPARTMENT OF HEALTH AND HUMAN SERVICES**
**HEALTH RESOURCES AND SERVICES ADMINISTRATION**
**OFFICE OF PHARMACY AFFAIRS**

I, Chantelle Britton, M.P.A., M.S., make the following declaration under 28 U.S.C. § 1746.

1)  I am the Director of the Office of Pharmacy Affairs (OPA). OPA is part of the Health Resources and Services Administration (HRSA), an agency within the U.S. Department of Health and Human Services. OPA is responsible for the day-to-day administration of the 340B Program.

2)  I have been part of OPA since 2015, and I became Director in April 2024. In my current role, I oversee the OPA staff that reviews requests by drugmakers that participate in the 340B Program to audit covered entities that participate the 340B Program.

3)  Pursuant to the statute that governs the 340B Program, 42 U.S.C. § 256b, participating drugmakers are permitted to audit covered entities for compliance with the statute's prohibition on diversion, 42 U.S.C. § 256b(a)(5)(B), and the statute's prohibition on duplicate discounting, 42 U.S.C. § 256b(a)(5)(A).

4)  In June 2024, OPA reviewed audit workplans submitted by participating drugmaker Johnson & Johnson (J&J) and permitted J&J to conduct the proposed audits via J&J's engaged auditor, Deloitte and Touche LLP (Deloitte). I understand that one of the covered entities subject to the audits, University of Washington Medical Center (UWMC), has asserted that the audit is overbroad. I submit this declaration to explain why Deloitte's data request list (DRL) is not overbroad.[1]

---

[1] The DRL is attached as Exhibit 5 to the Declaration of Jacqueline Cabe in Support of UWMC's Motion for Preliminary Injunction.

5) I understand that UWMC has broadly complained that the DRL demands access to voluminous confidential records, including HIPAA-protected health information, which (according to UWMC) have no bearing on the 340B statute's prohibitions on diversion or duplicate discounts. UWMC's assertion is incorrect.

6) To start, due to the nature of reviewing for duplicate discounts and diversion, patient medical records must be evaluated.  In order to test a sample of dispenses for diversion violations, auditors need to access patient records to determine if patient definition guidelines are met for a sampled prescription—i.e., they need to evaluate whether a covered entity is transferring 340B drugs to someone who is actually its "patient" under 42 U.S.C. § 256b(a)(5)(B). Specifically, with respect to diversion, it is necessary to review patient records to establish certain criteria, including but not limited to: (1) the covered entity has established a relationship with an individual, such that the covered entity maintains records of the individual's health care; and (2) the individual receives health care services from a professional who is either employed by the covered entity or who provides health care under contractual or other arrangements (e.g., referral for consultation) such that responsibility for the care provided remains with the covered entity. *See* "Notice Regarding Section 602 of the Veterans Health Care Act of 1992 Patient and Entity Eligibility," 61 Fed. Reg. 55,156 (Oct. 24, 1996).

7) Regarding duplicate discount review, the patient record is needed to identify a payor for claims that the covered entity deemed 340B eligible. Because a manufacturer is not required to pay both a Medicaid rebate and a 340B discount, this information is needed to review which claims were deemed Medicaid-eligible as part of the review for potential duplicate discounts.

8)  Moreover, the DRL specifically notes that PHI should be limited to the extent possible when submitting documentation to the auditor, in order to protect patient confidentiality. *See* DRL at 4 n.\*.

9)  I understand that UWMC has specifically asserted that the audit is overbroad because the DRL seeks information on all drug orders, not just 340B purchases. UWMC's assertion is misleading. To be clear, the DRL is limited to certain J&J drugs: Stelara, Tremfya, Erleada, Opsumit, Simponi and Uptravi. *See* DRL at 3-4 (seeking data related to "in-scope" and "applicable" drugs, which are set forth in the letter preceding the DRL). J&J sought the audit based on a stark increase in UWMC's utilization of the 340B Program—there was an approximately 89% growth in a six-month period, driven primarily by Stelara.[2] This sharp increase raises the concern that diversion may be occurring. *See also* "Manufacturer Audit Guidelines and Dispute Resolution Process," 61 Fed. Reg. 65,406, 65,407 (Dec. 12, 1996) ("Significant changes in quantities of specific drugs ordered by a covered entity . . . may be a basis for establishing reasonable cause [for an audit].").  The data sought in the DRL may be used to see if there was a shift in utilization based on purchases that were previously deemed non-340B purchases now being inappropriately deemed to be 340B purchases. Thus, review of the circumstances of such a shift falls within the statutory scope for manufacturer audits, namely, records pertaining to compliance with the statute's prohibition on diversion.

10) I understand that UWMC has asserted that Deloitte's DRL seeks information related to independent audits and internal monitoring, which (according to UWMC) goes beyond the issues of duplicate discounting or diversion. UWMC's assertion is incorrect. The DRL is specifically

---

[2] Under HRSA's 1996 340B manufacturer audit guidance, a significant increase in quantities of specific drugs ordered by a covered entity may be a basis for establishing reasonable cause for an audit.

limited to independent audits and internal monitoring activities that were performed "to evaluate for 340B diversion and compliance with the prohibition of duplicate discounts." DRL at 2.

11) I understand that UWMC asserts that Deloitte's DRL seeks copies of UWMC's internal policies and procedures, which (according to UWMC) go beyond the issues of duplicate discounting or diversion. Reviewing an entity's policies and procedures holistically is important to understanding how a covered entity's 340B Program is operationalized in order to avoid duplicate discounts and diversion. Moreover, the bulleted policies and procedures, *see* DRL at 1, point to specific facets of the avoidance of diversion and duplicate discounting (such as the definition of eligible patients, or the covered entity's approach to Medicaid billing). Note that the DRL's request for policy and procedures is consistent with the "Suggested Audit Steps" set forth in HRSA's 1996 manufacturer audit guidelines. *See* 61 Fed. Reg. at 65,410.

12) I understand that UWMC complains that the DRL seeks contact information for too many UWMC employees. But the DRL merely seeks such information for "[p]ersonnel involved in 340B activities" so that they may "participate in audit interviews and process walkthroughs." DRL at 2. Contact information for UWMC's 340B personnel who can discuss UWMC's 340B operations with Deloitte is self-evidently necessary for a functional audit.

13) I understand that UWMC complains that the DRL intrusively seeks information from confidential third-party agreements. But in requesting such agreements, the DRL specifically states: "Proprietary business-related information within the contract not related to the prevention of diversion and/or duplicate discounts may be redacted by [UWMC]." DRL at 2-3.

14) I understand that UWMC asserts that the DRL improperly seeks information about non-340B inventory and accounts. UWMC's assertion is misleading. Purchasing history for non-340B accounts can be used to verify shipping addresses and confirm that *ineligible* provider sites

4

have access to non-340B purchases—i.e., it is the eligible sites that are receiving 340B drugs—which helps establish that 340B drugs are not being improperly shunted to ineligible sites (i.e., ensuring there is not diversion). In a similar vein, such purchasing history serves as a check on duplicate discounting, because it shows that a covered entity's Medicaid carve-out locations (i.e., circumstances where the covered entity has committed to not using 340B drugs for Medicaid patients) have access to non-340B purchases.

15)  To the extent UWMC actually has specific, non-pretextual concerns about specific aspects of the Deloitte DRL, OPA's longstanding view is that UWMC and J&J could reach reasonable, practical compromises about the information necessary to complete the audit, as is typical in these sorts of situations—not that UWMC would refuse to engage in the audit altogether to completely avoid statutorily-mandated oversight of its 340B operation. Indeed, prior to the covered entity lawsuits this year pertaining to J&J's audits, there have been 18 manufacturer-conducted audits over the past decade-plus (and 37 instances when HRSA reviewed a proposed work plan and determined the manufacturer could proceed with an audit). Those manufacturer-conducted audits have gone forward without obstruction from the relevant covered entities.

In accordance with 28 U.S.C. § 1746, I declare, under penalty of perjury, that the above information is true and correct to the best of my knowledge and belief.

Signed this __19___ day of December 2024.

_____

Chantelle V. Britton, M.P.A., M.S.
Director
Office of Pharmacy Affairs
Health Resources and Services Administration