## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

―――――――――――――――――――――――――

UNIVERSITY OF WASHINGTON MEDICAL
CENTER,

       *Plaintiff*,

   vs.

DOROTHY FINK, in her official capacity as
Acting Secretary, United States Department of
Health and Human Services;

Acting Administrator of the Health Resources and
Services Administration, in his or her official
capacity as Administrator, Health Resources and
Services Administration[1];

and

Health Resources and Services Administration,

       *Defendants*.

Civil Action No. 1:24-cv-02998

## MEMORANDUM OF POINTS AND AUTHORITIES IN OPPOSITION TO JOHNSON & JOHNSON HEALTH CARE SYSTEM INC.'S MOTION FOR LEAVE TO FILE AS AMICUS CURIAE IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

―――――――――――――――――

[1] Per Fed. R. Civ. P. 25(d), where a public officer is a named party in their official capacity, their successor is automatically substituted as the named party. At the time of this filing, a successor to HRSA Administrator, Carole Johnson, has not been named.

## <u>TABLE OF CONTENTS</u>

I.   INTRODUCTION ........................................................................................................ 1

II.  BACKGROUND ......................................................................................................... 2

    A.  UWMC & the 340B Program. .......................................................................... 2

        1.  Plaintiff UWMC. .................................................................................. 2

        2.  The 340B Program & the Manufacturer Audit Guidelines ................... 3

    B.  HRSA Unlawfully Approved an Audit in Contravention of Its Own Manufacturer Audit Guidelines and Outside the Scope of the 340B Statute. ............................................................................................................. 5

        1.  J&J Failed to Provide Written Notice or Engage in a Thirty-Day Period of GoodFaith Attempts at Resolution ....................................... 5

        2.  J&J's Audit Is Outside the Scope of That Which Is Permitted Under the 340B Statute ........................................................................ 6

    C.  HRSA Refused to Reconsider Approval of J&J's Audit, Despite Knowing That J&J Failed to Meet the Procedural Prerequisites, and that J&J's Audit Requests Exceed the Scope of the 340B Statute. ................................... 6

III. ARGUMENT ............................................................................................................... 7

    A.  Legal Standard ................................................................................................. 7

    B.  J&J's Proposed Amicus Brief Is Primarily Focused on Biased Attacks on the 340B Program at Large, Rather than any Unique Perspective on Legal Issues That Are Relevant to This Case. .......................................................... 8

        1.  J&J Provides Little to No Insight on the Facts Giving Rise to this Lawsuit .................................................................................................. 8

        2.  J&J's Legal Arguments Are Identical to Those Raised by HRSA in its Motion to Dismiss .................................................................... 10

IV.  CONCLUSION ......................................................................................................... 12

# <u>TABLE OF AUTHORITIES</u>

**Cases**                                                                                                    **Page(s)**

*Am. Nat'l Ins. Co. v. FDIC*,
   642 F.3d 1137 (D.C. Cir. 2011) ....................................................................................8

*Bellion Spirits*, LLC v. U.S., 7 F. 4th 1201, 1209
   (D.C. Cir. 2021) .......................................................................................................11

*Ford v. Suntrust Mortgage*,
   282 F. Supp. 3d 227, 231 (D.D.C. 2017) ...................................................................8

*Holistic Candlers & Consumers Ass'n v. FDA*,
   664 F.3d 940 (D.C. Cir. 2012) ..................................................................................11

*Hopi Tribe v. Trump*,
   2019 WL 2494161 (D.D.C. 2019) .............................................................................12

*Jin v. Ministry of State Sec.*,
   557 F. Supp. 2d 131 (D.D.C. 2008) ............................................................................7

*MediNatura, Inc. v. FDA*,
   998 F.3d 931 (D.C. Cir. 2021) ..................................................................................11

*Soundboard Ass'n v. FTC*,
   888 F.3d 1261 (D.C. Cir. 2018) ................................................................................11

*Vanda Pharmaceuticals, Inc. v. FDA*,
   436 F. Supp. 3d 256 (D.D.C. 2020) .....................................................................7, 11

*Wash. Alliance of Tech. Workers v. DHS*,
   50 F.4th 164 (D.C. Cir. 2022) ....................................................................................7

*WildEarth Guardians v. Zinke*,
   368 F. Supp. 3d 41 (D.C. Cir. 2019) .....................................................................7, 12

**Statutes**

42 U.S.C. § 256b(a) .................................................................................................3, 4, 6, 9

Veterans Health Care Act of 1992, Pub. L. 102-585, § 256b, 106 Stat. 4943
   (1992) ...........................................................................................................................3

H.R. Rep. No. 384, 102d Cong., 2d Sess. Pt. 2 (1992) ...................................................3

**Other Authorities**

Final Notice Regarding Manufacturer Audit Guidelines and Dispute Resolution
　　Process, 61 Fed. Reg 65,406-65,413................................................................4, 5, 6

HRSA, *340B Drug Pricing Program Notice on Clarification of Manufacturer
　　Audits of 340B Covered Entities* (Nov. 21, 2011),
　　https://www.hrsa.gov/sites/default/files/hrsa/opa/manufacturer-audit
　　clarification-11-21-11.pdf ........................................................................................4

Johnson & Johnson, *Johnson & Johnson Reports Q4 and Full-Year 2024 Results*
　　(Jan. 22, 2025), https://www.investor.jnj.com/news/news-
　　details/2025/Johnson--Johnson-Reports-Q4-and-Full-Year-2024-
　　Results/default.aspx ...............................................................................................2

*Local Civil Rule 7(o) .................................................................................................7

## I.    INTRODUCTION

Johnson & Johnson Health Care Systems Inc.'s ("J&J") proposed amicus brief is a blatant hit piece on the 340B Program and the covered entities whom the program was designated to protect so that they can continue to provide important and life-saving care to the most vulnerable and indigent members of our society. If anything, J&J's brief demonstrates that Plaintiff University of Washington Medical Center's ("UWMC") fears about J&J misusing the audit process to irreparably injure UWMC's and other covered entities' reputation is well founded. See Complaint at ¶¶ 111-113.

J&J begins its Motion for Leave to File Brief as Amicus Curiae in Support of Defendants' Motion to Dismiss (the "Motion") and its proposed amicus brief by disparaging covered entities and the 340B Program in general, baselessly complaining that the program no longer "support[s] uninsured or indigent patients" but rather "primarily benefits sophisticated, well-resourced hospital systems." See Dkt. Nos. 28 at 2, 28-1 at 7. With this, J&J makes clear that its real purpose in submitting amicus briefing in this case is to further its campaign against the 340B Program, which it has repeatedly sought to limit access to over the years so that the pharmaceutical giant may avoid its obligations under the Program and further line its pockets. See Complaint at ¶¶ 83-94.

UWMC is a nonprofit that provided $406 million in uncompensated care in fiscal year 2023. Id. at ¶ 21. Over 33% of its hospital admissions are for low-income patients on Medicare Supplemental Security Income and Medicaid insurance. Id. Every penny of UWMC's budget, and every penny it saves via the 340B Program, is used to support hospital operations and staffing in furtherance of UWMC's sole mission, which is to improve the health of the public. See id. at ¶¶ 1, 17-22. By contrast, J&J is a for-profit pharmaceutical conglomerate who reported sales growth of

101704822.3

4.3% to **$88.8 billion** in 2024. *See* Johnson & Johnson, *Johnson & Johnson Reports Q4 and Full-Year 2024 Results*, (Jan. 22, 2025) https://www.investor.jnj.com/news/news-details/2025/Johnson--Johnson-Reports-Q4-and-Full-Year-2024-Results/default.aspx (last visited Jan. 29, 2025). The irony should not be lost on the Court that a multi-billion-dollar, for-profit, international pharmaceutical giant is accusing nonprofit, regional hospitals of "abusing" a government program that requires the manufacturer to provide its drugs at a discounted rate.

Although J&J's Motion and proposed amicus brief only further proves UWMC's point that the manufacturer is devoted to limiting access to the 340B Program, J&J's unfounded and disparaging remarks have no relevance to the legal issues before the Court. In whole, J&J's proposed brief provides no unique information or perspective on the legal issues raised by HRSA's Motion to Dismiss, and J&J's Motion for Leave should thus be denied.

## II.    BACKGROUND[2]

### A.    UWMC & the 340B Program.

#### 1.    *Plaintiff UWMC*.

UWMC, part of the University of Washington and UW Medicine, is a nonprofit hospital that is one of few providers equipped to provide high-level specialty care within the Pacific Northwest region. See Dkt. No. 1, UWMC's Complaint ("Complaint") at ¶ 1, 19. In pursuit of their mission to improve the health of the public, UWMC and UW Medicine provide more charity and uncompensated care for uninsured, underserved, and low-income patients than any other

---

[2] UWMC has provided the Court with detailed resuscitations of the factual background several times, including in its Complaint, Motion for Preliminary Injunction, and Response in Opposition to HRSA's Motion to Dismiss. *See* Dkt. Nos. 1, 18-1, 30. Thus, for the benefit of the Court and the parties, UWMC will provide only a brief summary of the underlying facts here.

healthcare system not only in Washington State, but also the surrounding four state region. Id. at ¶ 20.

UWMC, like other safety-net hospitals, relies upon the 340B Program to help support its provision of care to underserved populations and to invest in programs that improve access to care in its community. See id. at ¶ 1. The 340B Program is critical to UWMC's ability to provide uncompensated and charity care at the level it does because it allows UW Medicine to reinvest drug cost savings back into safety-net care services. Id. at ¶ 22. Nearly 20% of the uncompensated costs of care provided to uninsured, Medicare, and Medicaid patients by UW Medicine in fiscal year 2023 was supported by savings through the 340B Program. Id.

      2.    *The 340B Program & the Manufacturer Audit Guidelines.*

Congress created the 340B Program in 1992 to address egregious price hikes that pharmaceutical manufacturers were employing against safety-net hospitals and clinics in order to shift costs, and ensure that no penny would be lost, following the creation of the Medicaid Drug Rebate Program ("MDRP") in 1990. *See* Veterans Health Care Act of 1992, Pub. L. 102-585, § 256b, 106 Stat. 4943 (1992); H.R. Rep. No. 384, 102d Cong., 2d Sess. Pt. 2 at 10-12 (1992) (hereinafter "Veterans Health Care Act"). The result of this undertaking was the 340B Statute, which established a cap on the amount that pharmaceutical manufacturers could charge safety-net providers, or "covered entities," for covered outpatient drugs under the statute. *See generally* 42 U.S.C. § 256b(a). The 340B Program was thus crafted to protect covered entities from opportunistic pharmaceutical manufacturers whose profit-seeking comes at the expense of these covered entities' ability to provide comprehensive care to indigent patients. *See* Veterans Health Care Act.

The 340B Statute gives the Secretary and participating manufacturers a ***limited*** right to audit covered entity records solely relating to investigation of potential duplicate discounts or

diversion, which are prohibited by the statute. 42 U.S.C. § 256b(a)(5)(C). Additionally, the 340B

Statute requires that audits be conducted in accordance with the procedures set forth by HRSA. *Id.*

HRSA set forth the procedures under which audits must be conducted when it published

the Manufacturer Audit Guidelines. *See* Final Notice Regarding Manufacturer Audit Guidelines

and Dispute Resolution Process, 61 Fed. Reg. 65,406-65,413 (Dec. 12, 1996). The Manufacturer

Audit Guidelines establish procedures that a manufacturer must follow before they are permitted

to audit a covered entity for a perceived violation of the statute, and, correspondingly, which HRSA

must follow in its consideration and approval of such audits. *See id.*

The Manufacturer Audit Guidelines require a manufacturer to "notify the entity in writing

when it believes the entity has violated provisions of section 340B" before formally initiating a

request with HRSA to audit the covered entity. *Id.* at 65,410. This notice then triggers a thirty-day

period in which the parties are mandated to "attempt in good faith to resolve the matter." *Id.* Only

after this good-faith attempt fails is the manufacturer permitted to submit a request to HRSA asking

for permission to audit the covered entity. *Id.* Additionally, the Manufacturer Audit Guidelines

provide that a manufacturer may only conduct an audit "when it has documentation which

indicates that there is reasonable cause." *Id.* The Manufacturer Audit Guidelines limit the scope of

any proposed audit to one year, and, as such, manufacturers may only seek data and information

from a one-year time period. *Id.*

Before the manufacturer is permitted to move forward with an audit, it must provide HRSA

with evidence that it has reasonable cause to believe that a violation of the 340B Statute has

occurred. *See id.* HRSA must then review the materials submitted by the manufacturer to

determine if there is "reasonable cause" for an audit. *Id*; *see also* HRSA, 340B Drug Pricing

Program Notice on Clarification of Manufacturer Audits of 340B Covered Entities (Nov. 21,

2011), https://www.hrsa.gov/sites/default/files/hrsa/opa/manufacturer-audit-clarification-11-21-11.pdf (hereinafter "Clarification of Manufacturer Audits of 340B Covered Entities"). As HRSA has acknowledged, the agency's review of these materials ensures that the audit requests are properly within the scope of the 340B Statute, that the manufacturer has valid business concerns, that the audits are conducted with the least possible disruption to the covered entity, and serves to protect patient confidentiality and the covered entity's proprietary information. 61 Fed. Reg at 65,406. *Id.* Only after HRSA finds that the manufacturer has shown reasonable cause may the manufacturer move forward with the audit. 61 Fed. Reg. at 65,410. The sole method by which covered entities may be protected against baseless, costly, overbroad, and intrusive audits are the requirements for notice, good faith discussion, and appropriate and fulsome HRSA review described in the Manufacturer Audit Guidelines—none of which have occurred here.

**B.    HRSA Unlawfully Approved an Audit in Contravention of Its Own Manufacturer Audit Guidelines and Outside the Scope of the 340B Statute.**

      **1.    *J&J Failed to Provide Written Notice or Engage in a Thirty-Day Period of GoodFaith Attempts at Resolution.***

The factual background, set forth in UWMC's Complaint, Motion for Preliminary Injunction, and Response in Opposition to HRSA's Motion to Dismiss, demonstrate that J&J failed to notify UWMC, in writing or otherwise, that it believed UWMC had engaged in diversion or duplicate discounts in violation of the 340B Statute. *See* Dkt. Nos. 1, 18-1, 30. Because there was no notice, the parties did not have any opportunity to engage in good faith resolution attempts for a period of thirty days. Alternatively, even if J&J's emails dated May 17-28, 2024 constituted written notice, the manufacturer failed to engage in the thirty day good faith period before submitting its request to HRSA for permission to audit UWMC. *See* Complaint at ¶¶ 55-56. Yet, despite J&J's failures to follow the Manufacturer Aduit Guidelines, HRSA approved J&J's request to audit UWMC on an expedited schedule. *See* Complaint at ¶ 6.

2.    ***J&J's Audit Is Outside the Scope of That Which Is Permitted Under the 340B Statute.***

J&J's audit requests, enclosed in a letter from its contractor Deloitte, demand access to voluminous, confidential records held by UWMC that contain information about its patients, employees, business operations, and clinical operations. Complaint at ¶ 57. The extensive documents requested by Deloitte include patients' HIPAA-protected health information, personally identifiable information of many of UWMC's employees and providers outside of UWMC, and confidential contracts and other business records that would require extensive legal review and redaction before production. *Id.* at ¶ 58. Many, if not the majority, of the requests exceed the scope of manufacturer audits specifically implemented by Congress, as the requests have no bearing on the prohibition on diversion or duplicate discounts. *See id.* at ¶ 58-61. *See also* 42 U.S.C. § 256b(a)(5)(C) (statute only authorizing manufacturers to audit records that directly pertain to diversion or duplicate discounts). In addition, Deloitte requested data and information for more than a one-year audit period, which goes beyond the scope allowed by HRSA's Manufacturer Audit Guidelines. *Id.* at ¶ 62. *See* 61 Fed. Reg. at 65,410.

C.    **HRSA Refused to Reconsider Approval of J&J's Audit, Despite Knowing That J&J Failed to Meet the Procedural Prerequisites, and that J&J's Audit Requests Exceed the Scope of the 340B Statute.**

Despite numerous attempts by UWMC to notify HRSA that J&J had failed to adhere to the Manufacturer Audit Guidelines and that J&J's audit requests far exceeded what was permissible under the 340B Statute, HRSA refused to rescind its approval. *See* Complaint at ¶ 67-80. HRSA thus made a final decision that UWMC must submit to an overbroad, burdensome, and intrusive audit by third party J&J, despite J&J's noncompliance with the 340B Statute or HRSA's own Manufacturer Audit Guidelines. *See id.* at ¶ 81. HRSA's decision to allow J&J's unlawful audit to proceed left UWMC with only two options: comply with the improperly authorized, intrusive

audit—which goes beyond the scope contemplated by the 340B Statute and Manufacturer Audit Guidelines—or file the instant lawsuit. *See id*. at ¶ 82.

Thereafter, and following the filing of the instant lawsuit, HRSA reinforced the finality of this decision by issuing a letter threatening to terminate UWMC from the 340B Program if it did not comply with J&J's unlawfully approved audit. *See* Dkt. No. 18-4, Declaration of Kyle Vasquez in Support of UWMC's Motion for Preliminary Injunction ("Vasquez Decl."), Ex. 9 (Letter from HRSA to UWMC dated Nov. 12, 2024).

## III.    ARGUMENT

### A.    Legal Standard

J&J moves for leave to file amicus curiae briefing under Local Civil Rule 7(o). Pursuant to this rule, the requesting party must demonstrate that its "position is not adequately represented by a party," and its motion must be "filed in a timely manner such that it does not unduly delay the Court's ability to rule on any pending matter." LCvR 7(o)(2).

Amicus curiae, or "friends of the court," are permitted to submit briefing only if it is beneficial to the Court. *See e.g., Jin v. Ministry of State Sec*., 557 F. Supp. 2d 131, 136 (D.D.C. 2008). Courts generally grant leave when a movant will provide unique information or perspectives on relevant legal issues that the parties to the lawsuit otherwise cannot provide. *See Wash. Alliance of Tech. Workers v. DHS*, 50 F.4th 164, 194 (D.C. Cir. 2022); *WildEarth Guardians v. Zinke*, 368 F. Supp. 3d 41, 59 (D.C. Cir. 2019). Thus, a court should not grant leave for amicus briefing where it presents arguments that may already be found in the parties' briefs or that are not relevant to the legal issues before the court. *See WildEarth Guardians*, 368 F. Supp. 3d at 59 (holding that amicus briefing was inappropriate where the arguments largely supported arguments already contained in the plaintiffs' briefing); *Vanda Pharmaceuticals, Inc. v. FDA*, 436 F. Supp. 3d 256, 277 (D.D.C. 2020) ("Courts in this district have granted leave where a movant sought

to provide information regarding a significant, unclear legal issue, and denied leave where a movant sought to present arguments and insights that were not relevant to the stage of the litigation." (internal quotations omitted)).

**B.**    **J&J's Proposed Amicus Brief Is Primarily Focused on Biased Attacks on the 340B Program at Large, Rather than any Unique Perspective on Legal Issues That Are Relevant to This Case.**

      **1.**    ***J&J Provides Little to No Insight on the Facts Giving Rise to this Lawsuit.***

J&J's Motion and proposed amicus brief devotes little time to the relevant legal issues posed by HRSA's Motion to Dismiss. The majority of J&J's briefing amounts to a heated diatribe against the 340B Program at large, wherein J&J levels unsupported accusations that covered entities have somehow abused the program. With such little focus on the real legal issues in question, there can be no doubt that J&J's proposed brief is nothing more than a self-serving attempt to further its crusade against a program that was designed to protect covered entities from the exact type of opportunistic behavior that J&J is displaying in its brief.

For purposes of HRSA's Motion to Dismiss, the court must assume the truth of all material factual allegations in UWMC's Complaint and construe the complaint liberally to grant UWMC the benefit of all inferences that can be derived therefrom. *See Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011); *Ford v. Suntrust Mortgage*, 282 F. Supp. 3d 227, 231 (D.D.C. 2017). Therefore, J&J's attempts to add or provide commentary on the underlying facts for purposes of HRSA's Motion to Dismiss is entirely irrelevant to the Court's analysis.

To the extent that J&J does address the "factual" background of this lawsuit, its suggestion that J&J provided written notice that it believed UWMC to be engaging in duplicate discounts or diversion or otherwise attempted to engage in good faith attempts at resolving these concerns are unavailing. Nowhere in any of J&J's correspondence does the manufacturer state that it believed

UWMC to be in violation of the 340B Statute. *See* Complaint at ¶¶ 45-56. At most, J&J indicated that UWMC's increased utilization of the drug Stelara ***may*** warrant an audit. However, in this correspondence, J&J did not state that it believed, or had reasonable cause to believe, that UWMC had violated any requirement of the 340B Program, as required by the Manufacturer Audit Guidelines. Complaint at ¶ 47. And even if J&J's generic inquiry regarding UWMC's usage of Stelara could somehow be construed as notice of its belief that UWMC had violated the 340B Statute, which it cannot, J&J still failed to comply with the 30-day good faith resolution period, and HRSA improperly approved the audit despite such failure. *See id.* at ¶¶ 52-56. Importantly, J&J does not provide any new information or correspondence between itself and UWMC that has not already been provided by UWMC in its Complaint and various briefs.

Notably absent from J&J's Motion and proposed amicus brief is any mention of the numerous audit requests made by its contractor Deloitte that plainly exceed the scope of that which is permissible under the 340B Statute. *See id.* at ¶ 108. These requests include demands for a multitude of highly sensitive and confidential information about UWMC's patients, employees, business operations, and clinical operations—including HIPAA-protected health information, personally identifiable information of many of UWMC's employees and providers outside of UWMC, and confidential contracts and other business records that would require extensive legal review and redaction before production. *Id.* at ¶¶ 57-58. J&J's amicus brief contains no excuse or explanation for how this information is directly related to duplicate discounts or diversion, which is the only type of information the manufacturer is allowed to audit under the 340B Statute. 42 U.S.C. § 256b(a)(5)(C). Neither does J&J address why its audit requests demand information beyond the one-year limitation imposed by the Manufacturer Audit Guidelines. See Complaint at ¶¶ 37, 97.

Thus, J&J's assertion that it seeks to "set forth its legal position with respect to the statutory audit provisions and to provide the Court with a more complete account of J&J's engagement with UWMC in the leadup to J&J's audit request to HRSA" is neither accurate nor sufficient to justify J&J's participation in the instant lawsuit. The Court can review all the communications between UWMC and J&J, which UWMC has already submitted, along with HRSA's arguments on what these communications do or do not show. *See* Dkt. No. 26 ("HRSA's Motion to Dismiss") at 13-15 (setting forth HRSA's arguments about how J&J's communications allegedly complied with the Manufacturer Audit Guidelines). J&J's additional comments are highly unnecessary and superfluous, and its Motion for Leave should therefore be denied.

### 2. *J&J's Legal Arguments Are Identical to Those Raised by HRSA in its Motion to Dismiss.*

The Court should further deny J&J's Motion because the legal arguments contained in its proposed amicus brief are wholly repetitive of those already raised in HRSA's Motion to Dismiss. In fact, J&J's brief describes its legal arguments as "agree[ing] with the government, based on the facts alleged, that this action is not ripe" and "that HRSA's approval of J&J's audit request does not consummate a legal determination that alters UWMC's substantive rights and obligations, and thus is distinct from the types of agency decisions that qualify as final agency action." Dkt. No. 28-1 at 8.

J&J devotes a single paragraph to a resuscitation of HRSA's arguments on ripeness and finality, starting with an acknowledgment that these are arguments the government has already briefed twice in HRSA's opposition to UWMC's Motion for Preliminary Injunction and HRSA's Motion to Dismiss. *See id*. at 15 ("As the government explains in its opposition to the preliminary injunction motion and its motion to dismiss . . . ."). This single paragraph provides no perspective,

analysis, or legal authority that adds to the positions on finality and ripeness already espoused by HRSA in two 20+ page briefs.

For example, of the four cases cited by J&J in this paragraph, two were cited repeatedly in HRSA's briefing. *See* HRSA's Motion to Dismiss at 10-11 (citing *Soundboard Ass'n v. FTC*, 888 F.3d 1261 (D.C. Cir. 2018)) and at 9, 13 (citing *Holistic Candlers & Consumers Ass'n v. FDA*, 664 F.3d 940 (D.C. Cir. 2012)). And, the remaining two cases do not add anything novel to HRSA's arguments on finality and ripeness that have already been briefed ***twice*** as of this submission. The quote from the *MediNatura, Inc*. case cited by J&J consists almost entirely of language quoted from the *Holistic Candlers* case—which, as mentioned above, was cited and discussed by HRSA in support of its Motion to Dismiss. *See* Proposed Amicus Brief at 10 (quoting *MediNatura, Inc. v. FDA*, 998 F.3d 931, 940 (D.C. Cir. 2021)). Moreover, just like the *Holistic Candlers* case, the FDA letter at issue in *MediNatura* indicated that the FDA's decision was tentative, and that the agency had not expressed an unequivocal position regarding its authority to regulate plaintiff's products. *See* 998 F.3d at 940. Here, by sharp contrast, HRSA's actions give zero indication that the agency needs to engage in further procedures or that its position is subject to further agency consideration or modification.

The other case cited by J&J, *Bellion Spirits*, actually supports UWMC's position because it held that a letter from an agency constituted a final action because it imposed a "concrete legal effect" on the plaintiff that could only be avoided by filing a lawsuit. *Bellion Spirits*, LLC v. U.S., 7 F. 4th 1201, 1209 (D.C. Cir. 2021). Here, HRSA's approval of J&J's audit, and its letter threatening to terminate UWMC from the 340B Program if it does not comply with the audit, impose concrete legal effects that can only be avoided through the instant lawsuit.

At bottom, J&J's amicus brief is completely devoid of any unique legal argument, merely summarizing what HRSA has already argued, and it would be of no benefit for the Court to review it in deciding whether to grant or deny HRSA's Motion to Dismiss. *See e.g., Vanda Pharmaceuticals, Inc*. 436 F. Supp. 3d at 277-78 (denying a movant's motion for leave to file amicus brief where the arguments within the proposed brief were not relevant and were duplicative of the arguments contained in the plaintiff's motion for summary judgment); *WildEarth Guardians*, 368 F. Supp. 3d at 59 (denying a movant's motion for leave to file amicus brief because such brief did not have "unique information or perspective that can help the Court" (cleaned up)); *Hopi Tribe v. Trump*, 2019 WL 2494161 at *3 (D.D.C. 2019) (denying proposed amicus submissions because they did not primarily focus on issues presented by the defendants' motion to dismiss). Accordingly, J&J's Motion for Leave should be denied.

## IV.    CONCLUSION

J&J's amicus brief does not provide any new information, novel perspective, or additional arguments that are not already contained in the parties' briefing or that would otherwise benefit the Court in its decision making. For these reasons, the Court should deny J&J's Motion for Leave.

Dated:  February 4, 2025             Respectfully submitted,

                                POLSINELLI PC

                                By:   */s/ Chad Landmon*
                                    CHAD LANDMON
                                    (D.C. Bar No. 990347)
                                    1401 Eye ("I") Street, N.W., Suite 800
                                    Washington, DC 20005
                                    (202) 783-3300
                                    Fax: (202) 783-3535
                                    clandmon@polsinelli.com

                                    Jessica M. Andrade
                                    (admitted *pro hac vice*)
                                    1000 Second Avenue, Suite 3500
                                    Seattle, Washington 98104
                                    Telephone:  (206) 393-5400
                                    jessica.andrade@polsinelli.com

                                    Kyle A. Vasquez
                                    (admitted *pro hac vice*)
                                    150 N. Riverside Plaza, Suite 3000
                                    Chicago, Illinois 60606
                                    Telephone: (312) 463-6338
                                    kvasquez@polsinelli.com

                                    *Attorneys for Plaintiff University of*
                                    *Washington Medical Center*

## <u>CERTIFICATE OF SERVICE</u>

This is to certify that on February 4, 2025, I served the foregoing with the Clerk of the Court using the CM/ECF System, which will send electronic notification of such filing to all counsel of record.

_____/s/ Chad Landmon_____

*Attorney for University of Washington Medical Center*

14